[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 14-12082

————————————————

D.C. Docket No. 4:14-cv-0024-HLM

JOSHUA PARNELL,

Plaintiff - Appellee,

versus

CASHCALL, INC.,

Defendant - Appellant,

WESTERN SKY FINANCIAL, LLC,
MARTIN A. ("BUTCH") WEBB,

Defendants.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

(October 28, 2015)

Before WILSON and MARTIN, Circuit Judges, and HODGES,[*] District Judge.

WILSON, Circuit Judge:

This case requires us to determine whether a plaintiff properly challenges an arbitration agreement's validity when he does not specifically challenge the delegation provision contained therein. The Supreme Court has explained that where an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72, 130 S. Ct. 2772, 2779 (2010). Absent such a challenge, the Federal Arbitration Act (FAA) requires that we treat a delegation provision as valid and permit the parties to proceed to arbitration. *Id.* at 71–72, 130 S. Ct. at 2779; *see* 9 U.S.C. § 2. We hold that when a plaintiff seeks to challenge an arbitration agreement containing a delegation provision, he or she must challenge the delegation provision directly.

The district court erred in neglecting to recognize the delegation provision in the agreement in this case. Accordingly, we reverse and remand.

I

Upon completing his service in the United States Army and experiencing less-than-ideal financial circumstances, Plaintiff-Appellee Joshua Parnell

---

[*] Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

responded to a television advertisement for short-term loans.  Parnell, situated in Georgia, logged onto his computer and applied for a loan from Western Sky Financial, LLC (Western Sky), a South Dakota limited liability company with its principal place of business in Timber Lake, South Dakota.  Just ten minutes after Parnell submitted his online loan application, a Western Sky employee called Parnell to inform him that he had been approved for a $1000 loan and relevant paperwork would be emailed to him shortly.  The email Parnell received contained a document titled "Western Sky Consumer Loan Agreement" (Loan Agreement), which stated the terms of the contract between the parties.  The Loan Agreement's Truth in Lending Act Disclosure Statement made plain the 232.99% annual percentage rate and finance charge of $3,905.56.  In total, after making twenty-five scheduled repayments on the $1,000 loan, Parnell would pay $4,905.56.

Most importantly, the Loan Agreement contained an agreement to arbitrate any potential disputes between the parties.  This provision stated in relevant part:

> WAIVER OF JURY TRIAL AND ARBITRATION.
>
> PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.  Unless you exercise your right to opt-out of arbitration in the manner described below, any dispute you have with Western Sky or anyone else under this loan agreement will be resolved by binding arbitration.  Arbitration replaces the right to go to court, including the right to have a jury, to engage in discovery (except as may be provided in the arbitration rules), and to participate in a class action or similar proceeding.  In Arbitration, a dispute is resolved by an arbitrator instead of a judge or jury.  Arbitration procedures are simpler and more

3

limited than court procedures.  Any Arbitration will be limited to the dispute between yourself and the holder of the Note and will not be part of a class-wide or consolidated arbitration proceeding.

*Agreement to Arbitrate.*  You agree that any Dispute, except as provided below, will be resolved by Arbitration, which shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement.

*Arbitration Defined.*  Arbitration is a means of having an independent third party resolve a Dispute.  A "Dispute" is any controversy or claim between you and Western Sky or the holder or servicer of the Note.  The term Dispute is to be given its broadest possible meaning and includes, without limitation, all claims or demands (whether past, present, or future, including events that occurred prior to the opening of this Account), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e. money, injunctive relief, or declaratory relief).  A Dispute includes, by way of example and without limitation, any claim based upon marketing or solicitations to obtain the loan and the handling or servicing of my account whether such Dispute is based on a tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement. . . .

Parnell digitally signed the Loan Agreement and, seventy-two hours later, Western Sky directly deposited $1,000 in Parnell's bank account.  Prior to the due date of his first repayment, Parnell received notification that Defendant-Appellant CashCall, Inc. (CashCall) had taken over his loan and he should make all his payments to CashCall, not Western Sky.

4

After sending his final payment to CashCall, Parnell filed suit in state court, alleging that CashCall and Western Sky's business practices exploit tribal sovereign immunity and illicitly avoid federal and state regulations, including the Georgia Payday Lending Act, O.C.G.A. § 16-17-2. CashCall removed the case to federal court and moved to compel arbitration. The district court denied the motion after determining that (i) Parnell articulated a challenge to the arbitration provision in the parties' contract and (ii) the arbitration provision was unconscionable. CashCall now appeals.

## II

We have jurisdiction under 9 U.S.C. § 16. "We review de novo the district court's denial of a motion to compel arbitration." *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 873 (11th Cir. 2005).

## III

The district court erred in holding that Parnell properly challenged the Loan Agreement. We hold that the Loan Agreement contains a delegation provision and, though Parnell challenged the validity of the arbitration provision, he did not articulate a challenge to the delegation provision specifically. Therefore, the FAA requires that we treat the delegation provision as valid, enforce the terms of the Loan Agreement, and leave to the arbitrator the determination of whether the Loan Agreement's arbitration provision is enforceable.

A

The FAA places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption—"a national policy"—in favor of arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 1207 (2006); *accord AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, ___, 131 S. Ct. 1740, 1745 (2011); *Rent-A-Center*, 561 U.S. at 67, 130 S. Ct. at 2776; *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349 (11th Cir. 2014). The FAA governs the Loan Agreement because the parties conducted their business across state lines. *See* 9 U.S.C. § 2. From the State of Georgia, Parnell used the Internet to contact and then contract with Western Sky and CashCall, which are South Dakota and California corporations, respectively. Neither party disputes that Western Sky and CashCall are engaged in interstate commerce.

Section 2 of the FAA requires the courts to enforce an arbitration provision within a contract unless "such grounds exist at law or in equity for the revocation of any contract." Arbitration provisions will be upheld as valid unless defeated by fraud, duress, unconscionability, or another "generally applicable contract defense." *Rent-A-Center*, 561 U.S. at 67–68, 130 S. Ct. at 2776. Further, § 4 of the FAA permits one party to seek the assistance of the district court when the other party refuses to proceed with arbitration, and requires the court to "make an

order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

Importantly, parties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable.  The Supreme Court has upheld these so-called "delegation provisions" as valid, *Rent-A-Center*, 561 U.S. at 68–70, 130 S. Ct. at 2777–78, and explained that they are severable from the underlying agreement to arbitrate, *Buckeye*, 546 U.S. at 445, 126 S. Ct. at 1209.  When an arbitration agreement contains a delegation provision and the plaintiff raises a challenge to the contract *as a whole*, the federal courts may not review his claim because it has been committed to the power of the arbitrator.  Instead, the plaintiff must "challenge[] the delegation provision *specifically*."  *Rent-A-Center*, 561 U.S. at 72, 130 S. Ct. at 2779 (emphasis added).  In sum, absent a challenge to the delegation provision itself, the federal courts must treat the delegation provision "as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."  *Id.*

B

When federal courts interpret arbitration agreements, state contract law governs and directs the courts' analyses of whether the parties committed an issue to arbitration.  *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.

7

Ct. 1920, 1924 (1995); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1061 (11th Cir. 1998); *see also In re Checking Account Overdraft Lit.*, 685 F.3d 1269, 1275 (11th Cir. 2012) (applying South Carolina law to interpret an arbitration agreement subject to the FAA).  However, as the Supreme Court explained in *First Options*, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."  514 U.S. at 944, 115 S. Ct. at 1924 (internal quotation marks omitted).

Although the Loan Agreement expressly provides that the laws of the Cheyenne River Sioux Tribe (the Tribe) govern the agreement,[1] the parties provided this court with no rule of tribal law regarding contract interpretation and our research uncovered none.  We faced similar circumstances in *Paladino*, where we made an assumption regarding the proper choice of law based on one party's place of employment because neither party addressed which state's law applied and the relevant "principles of contract construction [were], in any event, matters

---

[1] The Loan Agreement provides in relevant part:
> GOVERNING LAW.  This Agreement is governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Cheyenne River Sioux Tribe.  We do not have a presence in South Dakota or any other states of the United States.  Neither this Agreement nor Lender is subject to the laws of any state of the United States of America.  By executing this Agreement, you hereby expressly agree that this Agreement is executed and performed solely within the exterior boundaries of the Cheyenne River Indian Reservation, a sovereign Native American Tribal Nation.  You also expressly agree that this Agreement shall be subject to and construed in accordance only with the provisions of the laws of the Cheyenne River Sioux Tribe, and that no United States state or federal law applies to this Agreement.

8

of hornbook law." *See* 134 F.3d at 1061 n.1.  Here, the plain-meaning rule is a foundational principle of common law contract interpretation widely adopted in the United States, including in Georgia, the forum that Western Sky specifically targeted with its television advertisement and in which Parnell viewed and signed the Loan Agreement.  Accordingly, we look to Georgia law for a statement of the plain-meaning rule and apply it in this case.

Under Georgia law, "[i]f the language of the contract is plain, unambiguous, and capable of only one reasonable interpretation, that interpretation must control, and no construction of the contract is required or even permissible." *See City of Decatur v. DeKalb Cty.*, 713 S.E.2d 846, 849 (Ga. 2011).  Applying this rule and remaining cognizant of the requirement that a contractual commitment to arbitrate arbitrability must be "clear and unmistakable," we hold that the Loan Agreement's plain language contains an express delegation provision.  This provision conveys the parties' intent to submit to an arbitrator the threshold issue of arbitrability.

The delegation provision appears in the third sub-paragraph of the Loan Agreement's arbitration provision.  The portion of the Loan Agreement titled "Arbitration Defined" commits all "Disputes" to arbitration and expressly states that a Dispute includes "*any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement*."  Though contained within a sub-

9

provision, this language unambiguously commits to the arbitrator the power to determine the enforceability of the agreement to arbitrate.

Parnell urges us to hold that no delegation provision exists because this language appears within a string citation of examples. However, there is no requirement that a delegation provision be offset from other contractual language or solely discuss arbitration of arbitrability in order to be valid. Moreover, the Loan Agreement (i) requires that all Disputes be resolved in arbitration, with Disputes construed broadly, and (ii) *specifically* defines Disputes to include *at least* "issue[s] concerning the validity, enforceability, or scope of this loan or the Arbitration agreement," regardless of what other matters may also constitute a Dispute. Thus, the Loan Agreement contains a delegation provision, providing clear and unmistakable evidence that the parties intended to commit the issue of arbitrability to the arbitrator.

## C

Because the Loan Agreement contains a delegation provision, we only retain jurisdiction to review a challenge to that particular provision. Absent a direct challenge, we must treat the delegation provision as valid and allow the arbitrator to determine the issue of arbitrability. *Rent-A-Center*, 561 U.S. at 72, 130 S. Ct. at 2779. Parnell's complaint only challenges the arbitration provision generally, and therefore falls short of the *Rent-A-Center* pleading requirement.

10

In *Rent-A-Center*, Plaintiff Jackson brought a discrimination suit against his former employer, who responded with a motion to compel arbitration based on the signed employment agreement between the parties. In opposing the motion to compel arbitration, Jackson stated that "the *entire agreement* seems drawn to provide Rent-A-Center with undue advantages should an employment-related dispute arise" and that "the *arbitration agreement as a whole* is substantively unconscionable." *Id.* at 73, 130 S. Ct. at 2779. The Supreme Court determined that the arbitration agreement contained a delegation provision because it gave the arbitrator "exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement," *id.* at 71, 130 S. Ct. at 2779, and Jackson's opposition to the motion only challenged the arbitration agreement as a whole. Accordingly, the Court ignored Jackson's arguments that the agreement was procedurally and substantively unconscionable because at no point did Jackson make out a challenge to the delegation provision itself, *id.* at 72, 130 S. Ct. at 2779, and enforced the arbitration agreement as § 2 of the FAA required.

Parnell's complaint largely parallels the shortcomings of Jackson's opposition to the motion in *Rent-A-Center*. Parnell includes in the final paragraphs of his complaint that the Loan Agreement contains an arbitration provision that violates substantive Georgia law. The cited Georgia law states that "[a]n arbitration clause in a payday loan contract shall not be enforceable *if the contract*

11

is unconscionable" and lists a variety of factors the courts should consider when evaluating unconscionability under state law.  O.C.G.A. § 16-17-2(c)(2) (emphasis added).  Echoing the generalized allegations in *Rent-A-Center*, Parnell's complaint further alleges that "[t]he *Loan Agreement* is unconscionable" because the interest rate is usurious; the designation of tribal law and jurisdiction is contrary to Georgia law and public policy; the forum selection clause "is unconscionable as such a forum deprive[s] Plaintiff and the putative class of their day in court"; arbitration is prohibitively expensive; and the Loan Agreement prohibits class actions.  These allegations all address the validity of the underlying agreement and reflect the extent of Parnell's challenge.  At no point in his complaint does Parnell specifically challenge the parties' agreement *to commit to arbitration* the question of the enforceability of the arbitration agreement.  Rather, he asks us to review the validity of the arbitration agreement as a whole, a task which the delegation provision expressly commits to an arbitrator.

Our holding in this case does not, as Parnell suggests, require future plaintiffs to "file one challenge to an agreement as a whole, followed by a challenge to a certain clause, followed by challenges to single sentences, followed by challenges to words tacked onto conjunctions at the end of a sentence."  To the contrary, the result in this case merely follows the directive set forth in *Rent-A-Center* and emphasizes that when a would-be plaintiff seeks to challenge an

12

arbitration agreement containing a delegation provision, he or she must challenge the delegation provision directly.

## IV

We hold that the Loan Agreement between the parties contained a delegation provision and because Parnell did not directly challenge that provision, § 2 of the FAA requires us to treat it as valid and enforce the Loan Agreement according to its terms.  Thus, we reverse the district court's denial of CashCall's motion to compel arbitration and remand for proceedings consistent with this opinion.  As this case remains in its pre-trial stages, Parnell may still seek leave from the district court to amend his complaint to reflect a proper challenge to the delegation provision.[2]

REVERSED and REMANDED for proceedings consistent with this opinion.

---

[2] The record reflects that Parnell already once amended his complaint.  However, before trial, the Federal Rules of Civil Procedure permit a party to amend his or her complaint with the court's leave, which should be "freely give[n]."  Fed. R. Civ. Pro. 15(a)(2).