WILSON, Circuit Judge:
This case requires us to interpret the non-waiver provision of the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) as it relates to the Federal Arbitration Act (FAA) and enforcement of an arbitration agreement with terms purportedly in conflict with USERRA. USERRA provides statutory protection to members of the military against discrimination by employers because of their military service, 38 U.S.C. § 4301(a), and contains a non-waiver provision that prevents contractual agreements from reducing, limiting, or eliminating rights protected under the Act, see id. § 4302(b).
After thorough consideration of the parties’ briefs and having had the benefit of oral argument, we conclude that the FAA and USERRA’s non-waiver provision are *1323 not in conflict and the district court properly compelled arbitration.
I
Plaintiff-Appellant Rodney Bodine was an employee of Defendant-Appellee Cook’s Pest Control (Cook’s) from 2012 to 2014, during which time he also served in the United States Army Reserve. Bodine’s commitment to the armed forces required him to periodically take leave from work to attend drills and training. Bodine alleges that his supervisor, Max Fant, repeatedly discriminated against him on the basis of his military service by making negative comments about his military obligations, encouraging him to leave the Army Reserve, taking work away from him while he was at drills and training, and eventually firing him in retaliation for continued military service.
After losing his job, Bodine filed suit against Cook’s and Fant (collectively, the Defendants), bringing claims under US-ERRA and Alabama state law. The Defendants responded with a motion to dismiss or, in the alternative, to stay action and compel arbitration, citing Bodine’s employment contract (the Contract).[1] Under the Contract, the parties agreed to resolve any disputes arising out of or in any way related to the Contract through alternative dispute resolution mechanisms (the arbitration agreement). Bodine argued before the district court that the arbitration agreement was unenforceable because the arbitration agreement itself contained two terms that violated USERRA: (1) the limitation on the employee’s arbitration costs, with opportunity for the arbitrator to reapportion costs and attorney’s fees in the arbitrator’s final order (the fee term); and (2) the six-month statute of limitations (statute of limitations term). USERRA states there is no statute of limitations for bringing a USERRA claim and no imposition of court costs or fees may be charged to a USERRA plaintiff. See 38 U.S.C. §§ 4323(h)(1), 4327(b).
The Defendants conceded that these two terms ran afoul of USERRA, but argued that the Contract’s severability clause could be used to remove the invalid terms from the arbitration agreement while retaining and enforcing the remainder, pursuant to the FAA.[2] Bodine responded that USERRA’s non-waiver provision, 38 U.S.C. § 4302(b), precluded enforcement of the arbitration agreement, despite the FAA, because the plain language of § 4302(b) prevents enforcement of any agreement that contains terms that reduce substantive USERRA rights, and the fee term and statute of limitations term reduced Bodine’s substantive USERRA rights.
The district court agreed with the Defendants. Applying the FAA’s “liberal federal policy favoring arbitration agreements,” Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), the court looked to state law to determine whether the severability clause was enforceable. See Bodine v. Cook’s Pest Control, Inc., No. 15-00413, slip op. at 4-5, 2015 WL 3796493 (N.D. Ala. June 18, 2015). Then, after concluding Alabama law favors severability and the parties clearly anticipated severance of any invalid terms, the court entered an order striking from the arbitration agreement the two terms that violated USERRA, dismissing the suit *1324 without prejudice, and ordering Bodine to submit his claims to arbitration. Id. at 5-7. The district court’s opinion did not address the role or scope of USERRA’s non-waiver provision, or its relationship to the FAA.
Bodine filed this timely interlocutory appeal.
II
We have jurisdiction pursuant to 9 U.S.C. § 16. Hill v. Rent-A-Center, Inc., 398 F.3d 1286, 1288 (11th Cir. 2005). We review de novo the district court’s grant of a motion to dismiss and compel arbitration. Dale v. Comcast Corp., 498 F.3d 1216, 1219 (11th Cir. 2007).
III
Bodine renews the same argument on appeal. He contends that the district court-erred by failing to apply the plain language of USERRA’s non-waiver provision. Had the court properly applied that provision, 38 U.S.C. § 4302(b), Bodine argues, the arbitration agreement would be unenforceable, as a whole, because the plain language of that subsection states that US-ERRA “supersedes” any “agreement” that “limit[s], reduce[s], or eliminate^” any rights protected under USERRA, and the arbitration agreement contains USERRA-offensive terms. See 38 U.S.C. § 4302(b).
We proceed in two parts. First, we explain why the Contract’s arguable delegation clause — which would require that the-arbitrator, rather than the court, determine whether the arbitration agreement is enforceable — does not control this appeal. Second, in reaching whether the arbitration agreement is enforceable, we conclude that § 4302(b) is not in conflict with the FAA and the district court properly determined the arbitration agreement is enforceable.
A
The parties to a contract may agree to have an arbitrator, rather than a court, determine whether the contract’s arbitration agreement is enforceable. These clauses are generally referred to as “delegation clause[s].” See Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68-70, 130 S.Ct. 2772, 2777-78, 177 L.Ed.2d 403 (2010). However, the mere presence of a delegation clause in a contract is not dis-positive of the court’s disposition of the case. A delegation clause operates as a defense that the defendant must raise in order to rely upon it. See Johnson v. Key-bank Nat’l Ass’n, 754 F.3d 1290, 1291-92 (11th Cir. 2014). When a delegation clause is properly raised by the defendant and never specifically challenged by the plaintiff, the FAA directs the court to treat the clause as valid and compel arbitration. See Parnell v. CashCall, Inc., 804 F.3d 1142, 1144 (11th Cir. 2015).[3] When the defendant does not properly raise the delegation clause and the plaintiff suffers prejudice as a result, the defendant has waived the delegation clause and the court must determine whether the arbitration agreement is enforceable. See Johnson, 754 F.3d at 1294.
Here, the parties disagree whether the Contract contains a delegation clause, but even to the extent one exists, the Defendants did not properly raise it. *1325 The Defendants’ original and amended Motions to Dismiss only vaguely referenced the issue of arbitrability and their Reply to Bodine’s Response in Opposition argued the merits of the arbitration agree- • ment’s enforceability, without mentioning that the issue should be committed to the arbitrator. Further, the district court ruled in the Defendants’ favor based on its construction of the arbitration agreement, and the Defendants’ appellate brief defends that ruling without arguing that the arbitrator should have reached that conclusion. As such, the Defendants have not “argued consistently that the threshold issue was assigned by agreement to the arbitrator,” and their failure to do so prejudiced Bo-dine by causing him to suffer the cost of litigating an issue that arbitration was designed to alleviate. See Johnson, 754 F.3d at 1294-95 (internal quotation marks omitted and alteration adopted). Thus, the Defendants waived enforcement of the delegation clause. Compare Rent-A-Center, 561 U.S. at 66, 130 S.Ct. at 2775 (defendant properly raised delegation clause by consistently arguing that the issue of arbi-trability was assigned to the arbitrator) and Parnell, 804 F.3d 1142 (same), with Barras v. Branch Banking & Trust Co., 685 F.3d 1269 (11th Cir. 2012) (delegation clause waived because defendant raised the delegation clause for the first time a full year after litigation commenced).
Accordingly, whether the arbitration agreement is enforceable was properly before the district court and is now properly before us on appeal.
B
As a general matter, the.FAA makes enforceable arbitration agreements contained in employment contracts of non-transportation workers. See 9 U.S.C. §§ 1, 2; Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119, 121 S.Ct. 1302, 1311, 149 L.Ed.2d 234 (2001). Here, the Contract is an employment contract between Bodine and Cook’s for a job “calling upon customers of [Cook’s] for the purpose of providing, soliciting for and/or selling the services and products of [Cook’s] as they relate to the pest control business.” It is therefore a non-transportation employment contract covered by the FAA.
Under the FAA, we are obligated to “rigorously enforce arbitration agreements according to their terms, including. ... for claims that allege a violation of a federal statute, unless the FAA’s mandate has been overridden by a contrary congressional command.” Am. Express Co. v. Italian Colors Rest., 570 U.S. -, -, 133 S.Ct. 2304, 2309,186 L.Ed.2d 417 (2013) (internal quotation marks omitted). Section 3 of the FAA authorizes federal district courts to stay proceedings and compel arbitration of “any issue referable to arbitration under an agreement in writing for such arbitration.” 9 U.S.C. § 3.
When an arbitration agreement contains invalid terms but the overarching contract has a severability clause, the FAA requires that we turn to state law to determine whether the contract’s severability clause may be used to remove the offending terms in the arbitration agreement. See Jackson v. Cintas Corp., 425 F.3d 1313, 1317 (11th Cir. 2005) (per curiam). We rely on state law because, “in placing arbitration agreements on an even footing with all other contracts, the FAA makes general state contract law controlling.” Anders v. Hometown Mortg. Servs., 346 F.3d 1024, 1032 (11th Cir. 2003). If the severability clause is enforceable under the relevant state law, then “any invalid provisions [in the arbitration agreement] aré severable, [and] the underlying claims are to be arbitrated.” Id.
Here, Bodine does not argue that USERRA reflects a “contrary congression *1326 al command” to prevent waiver of a judicial forum for USERRA claims. See Italian Colors Rest., 570 U.S. at -, 133 S.Ct. at 2309. In fact, the parties expressly agree that USERRA claims are arbitrable. See Bodine, slip op. at 4. Instead, Bodine makes the narrower argument that US-ERRA’s non-waiver provision and the FAA are incompatible as applied to an arbitration agreement with USERRA-of-fending terms, and USERRA alone should govern this dispute. Bodine believes the statutes conflict because he reads USER-RA’s non-waiver provision to mandate automatic invalidation of an entire contract or agreement that contains USERRA-of-fending terms, while the FAA allows a contract’s severability clause to be used to sever those offending terms, if state law gives effect to severability clauses. Thus, to determine whether the district court erred, we must first evaluate whether US-ERRA’s non-waiver provision conflicts with the FAA.
We are hesitant to conclude that two federal statutes are in conflict with one another. “When two statutes are capable of co-existence ... it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.” Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 533, 115 S.Ct. 2322, 2326, 132 L.Ed.2d 462 (1995). To determine whether such a conflict exists, the courts must “examine[ ] with care” the text of the statute. See id. at 532, 115 S.Ct. at 2326.
USERRA’s non-waiver provision reads as follows:
This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.
38 U.S.C. § 4302(b). Bodine argues that the word “supersedes” means § 4302(b) automatically invalidates any contractual agreement that “reduces, limits, or eliminates” substantive rights protected under USERRA. Thus, he contends, § 4302(b) invalidates the Contract’s entire arbitration agreement, if not the Contract itself, because the arbitration agreement contains a fee term and statute of limitations term that violate §§ 4323(h)(1) and 4327(b) of USERRA.
We are unpersuaded that Bodine’s construction and application of § 4302(b) is the most reasonable reading of that provision. Instead, we conclude that USERRA can be read in harmony with the FAA.
To begin, the dictionary definition of “supersedes” . does not support Bodine’s reading that Congress intended § ■ 4302(b) to “automatically invalidate” a contract that contains invalid terms.[4] Black’s Law Dictionary defines “supersede” as “[t]o annul, make void, or repeal by taking the place of.” Supersede, Black’s Law Dictionary 1667 (10th ed. 2014). Similarly, Merriam-Webster’s entry reads: “(1) (a) to cause to be set aside, (b) to force out of use as inferior; (2) to take the place, room, or position of; (3) to displace in favor of another: supplant.” Supersede, Merriam Webster’s Collegiate Dictionary 1183 (10th ed. 1996). Lastly, Webster’s: “(1) to cause to be set aside or dropped from use as inferior or obsolete and replaced by something else; (2) to take the place or office of; to succeed; (3) to remove or cause to be removed so as to make way for another; to supplant.” Supersede, Webster’s New Twentieth Century Dictionary of the En *1327 glish Language 1830 (1976) (unabridged). All three dictionaries indicate that the word “supersedes” involves replacing one thing with another, rather than causing something to be cancelled or invalidated without replacement.
Moreover, USERRA itself provides many substantive terms to govern employment relationships, generally, but it cannot provide all the terms necessary to define any particular employment relationship. Construing “supersedes” to mean USERRA’s terms replace all the terms of an employment contract would leave critical gaps in the employer-employee relationship. Thus, by writing “[t]his chapter supersedes,” we believe Congress contemplated that the substantive terms set forth in USERRA would “take the place of’ those in a contract or agreement that work to “replace[ ], limit[ ], or eliminate[ ]” “any right or benefit” guaranteed under the statute. This reading ensures that all invalid terms are replaced with USERRA terms, while all other terms of employment that do not offend USERRA and provide particularized details as to the way the employer-employee relationship functions are maintained.
Reading § 4302(b) in context further confirms that this is the correct construction. Cf., e.g., King v. Burwell, 576 U.S. ——, -, 135 S.Ct. 2480, 2489, 192 L.Ed.2d 483 (2015) (explaining that courts must look to statutory provisions “in their context and with a view to their place in the overall statutory scheme” because courts are tasked with “constru[ing] statutes, not isolated provisions” (citation and internal quotation marks omitted)). Subsection (a) contemplates that a contract might include additional or more beneficial terms than those set forth in USERRA. See 38 U.S.C. § 4302(a); see also 20 C.F.R. § 1002.7(c). To ensure our servicemen and women benefit from these terms, § 4302(a) mandates that no provision of USERRA be read to “supersede, nullify or diminish any ... contract, agreement, ... or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter.” 38 U.S.C. § 4302(a). If we were to read “supersede” in § 4302(b) as invalidating an entire agreement due to its USERRA-violative terms, then we would run afoul of § 4302(a) because so doing would “nullify” more beneficial terms in addition to removing the invalid ones.
Lastly, we find no conflict between the liberal canon of construction commonly applied to reemployment rights statutes, see, e.g., Ala. Power Co. v. Davis, 431 U.S. 581, 584-85, 97 S.Ct. 2002, 2004-05, 52 L.Ed.2d 595 (1977), and our interpretation of § 4302(b). Bodine contends that this liberal canon requires us to construe the Act as broadly invalidating any contract or agreement, in whole, that contains a US-ERRA-offending term. But for the reasons just stated, so doing would be not only contrary to the text of USERRA but also to the detriment of the employee. Consequently, by construing § 4302(b) to replace all terms in conflict with USERRA while retaining all those terms more beneficial than USERRA, we have read the non-waiver provision to provide the greatest benefit to our servicemen and women.
Accordingly, USERRA’s non-waiver provision should not be read to automatically invalidate an entire agreement with USERRA-offending terms. Instead, the plain language of § 4302(b) contemplates modification of an agreement by replacing USERRA-offending terms with those set forth by USERRA. Thus, we hold that USERRA’s non-waiver provision does not conflict with the FAA: both statutes provide a mechanism for striking from an arbitration agreement a term in conflict with USERRA.
*1328 It follows, then, that the district court committed no error by looking to state law, pursuant to the FAA, to determine whether the invalid terms from the arbitration agreement could be severed and the remainder enforced. See Anders, 346 F.3d at 1032. We agree with the district court that the Contract’s arbitration agreement was enforceable. The Contract expressly states that any determination regarding the “validity, construction, interpretation, and effect” of the Contract is governed by Alabama law, which we have held “favors severability” and “gives full force and effect to severability clauses.”[5] See id. Additionally, the Contract contains an express severability provision, applicable to all portions of the Contract, reflecting the parties’ clear intent to remove any invalid or unenforceable terms and apply the remainder. Thus, “[b]eeause severability clauses are enforceable under [Alabama] law and the FAA requires that arbitration agreements be treated no less favorably than other contracts under state law,” Jackson, 425 F.3d at 1317, the district court correctly concluded that the severability clause in the Contract could be used to “surgically lance the unlawful portions of the arbitration clause,” Bodine, slip op. at 4.
However, the district court’s order should not have performed that surgery itself. The arbitrator, not the district court, must determine the validity of the terms of the arbitration agreement. See Anders, 346 F.3d at 1032-33. At arbitration, the parties will have an opportunity to present their arguments regarding the validity of the terms of the arbitration agreement, and the arbitrator will be tasked with determining their validity. Accordingly, we affirm the district court’s order insofar as it compels arbitration of Bodine’s claims, but we leave to the arbitrator whether the arbitration agreement’s terms are valid. .
IV
In sum, we affirm the district court’s decision to compel arbitration.
AFFIRMED.

. For ease of reference, the pertinent portions of the Contract are reproduced in the Appendix.

. Article VIII.B of the Contract provides as follows: "If any term or provision of this Agreement shall be invalid or unenforceable to any extent or application, then the remainder of this Agreement shall be valid and enforceable to the fullest extent and the broadest application permitted by law....”

. In Parnell, we stated that, "[bjecause the [arbitration agreement] contains a delegation provision, we only retain jurisdiction to review a challenge to that particular provision.” 804 F.3d at 1148. We did not use the term "jurisdiction” in its technical sense, but rather to convey that whether the arbitration agreement was enforceable was a decision committed not to the court, but to the arbitrator. See id.-, see also Arbaugh v. Y & H Corp., 546 U.S. 500, 510, 126 S.Ct. 1235, 1242, 163 L.Ed.2d 1097 (2006) (observing that the "[Supreme] Court, no less than other courts, has sometimes been profligate in its use of the term ['jurisdiction'].”).

. USERRA does not define "supersedes.”

. Alabama law favored severability at the time we decided Anders and continues to do so today. See Sloan Southern Homes, LLC v. McQueen, 955 So.2d 401, 404 (Ala. 2006) (reaffirming rule from Ex parte Celtic Life Ins. Co., 834 So.2d 766 (Ala. 2002), on which we previously relied, that the Alabama courts "will excise void or illegal provisions in a contract, even in the absence of a severability clause”).