**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KEVIN ZIOBER, an individual, *Plaintiff-Appellant*, | No. 14-56374 |
| | D.C. No. 8:14-cv-00675-CJC-DFM |
| v. | |
| BLB RESOURCES, INC., a California Corporation, *Defendant-Appellee.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted July 5, 2016
Pasadena, California

Filed October 14, 2016

Before: Mary H. Murguia and Paul J. Watford, Circuit
Judges, and Susan R. Bolton,[*] District Judge.

Opinion by Judge Murguia;
Concurrence by Judge Watford

---

[*] The Honorable Susan R. Bolton, United States District Judge for the District of Arizona, sitting by designation.

# SUMMARY[**]

## Arbitration / Labor Law

The panel affirmed the district court's order compelling arbitration and dismissing an action under the Uniformed Services Employment and Reemployment Rights Act.

Joining other circuits, the panel held that USERRA does not prohibit the compelled arbitration of claims arising under its provisions, which establish employment rights for returning servicemembers. The panel concluded that neither the text nor the legislative history of USERRA evinced Congressional intent to override the Federal Arbitration Act's mandate that courts rigorously enforce arbitration agreements according to their terms.

Concurring, Judge Watford wrote that while the proper interpretation of USERRA was open to debate, it was not prudent to create a circuit split by reversing the district court's ruling.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Peter Romer-Friedman (argued) and R. Joseph Barton, Cohen Milstein Sellers & Toll PLLC, Washington, D.C.; Kathryn S. Piscitelli, Orlando, Florida; Thomas G. Jarrard, Law Office of Thomas Jarrard, PLLC, Spokane, Washington; for Plaintiff-Appellant.

Lonnie D. Giamela (argued), Jimmie E. Johnson, and Nathan V. Okelberry, Fisher & Phillips LLP, Los Angeles, California, for Defendant-Appellee.

**OPINION**

MURGUIA, Circuit Judge:

The plaintiff, Kevin Ziober, signed an agreement with his employer requiring the arbitration of legal disputes. Ziober later sued the employer, claiming that he was fired from his job after providing notice of his deployment to Afghanistan in the United States Navy Reserve. The lawsuit alleged violations of the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), which establishes employment rights for returning servicemembers. This case presents the question of whether USERRA prohibits the compelled arbitration of claims arising under its provisions. We join the other circuits to have considered the question and conclude that USERRA contains no such prohibition. We therefore affirm the district court's order compelling arbitration and dismissing Ziober's complaint.

I.

The facts, as alleged in the underlying complaint, are not in dispute for purposes of this appeal. Ziober served in the United States Navy Reserve and worked in his civilian life as an operations director for defendant BLB Resources, Inc., a real estate marketing and management firm. Approximately six months after joining the company, Ziober signed a bilateral arbitration agreement. The agreement stated:

> To the fullest extent allowed by law, any controversy, claim or dispute between Employee and the Company . . . relating to or arising out of Employee's employment or the cessation of that employment will be submitted to final and binding arbitration before a neutral arbitrator . . . for determination in accordance with the American Arbitration Association's ("AAA") Employment Arbitration Rules and Mediation Procedures (excluding mediation), including any subsequent modifications or amendments to such Rules, as the exclusive remedy for such controversy, claim or dispute.

Under the agreement, the company agreed to pay all arbitration costs. The agreement further specified that the scope of discovery and available remedies would be the same in arbitration as they would be in court.

Ziober subsequently told the company that the Navy was recalling him to active duty in Afghanistan. On Ziober's last scheduled day of work, the company informed him that he would not have a job upon his return to civilian life.

In April 2014, after returning from Afghanistan, Ziober sued his former employer for violating USERRA's provisions protecting servicemembers against discrimination and establishing reemployment rights. The complaint also includes various state law claims, including claims for wrongful termination and violations of a state statute protecting servicemembers against discrimination. The employer moved to compel arbitration pursuant to the agreement Ziober had signed. The district court granted the defendant's motion after concluding that USERRA did not invalidate or supersede the arbitration agreement. This appeal followed.

## II.

We have jurisdiction under 9 U.S.C. § 16(a)(3) to review the district court's order compelling arbitration and dismissing Ziober's complaint. We review the district court's order de novo. *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004).

## III.

Our analysis begins with more than three decades of Supreme Court precedent recognizing the "liberal federal policy favoring arbitration agreements," as established by the Federal Arbitration Act (FAA). *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 669 (2012). That pro-arbitration policy extends to arbitration agreements in the employment contracts of non-transportation workers. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001). The FAA requires courts to "'rigorously enforce' arbitration agreements according to

their terms," including agreements to arbitrate claims arising under federal statutes. *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)); *see also CompuCredit*, 132 S.Ct. at 669. Section 3 of the FAA specifically directs federal district courts to stay proceedings and compel arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3.

An exception to the FAA's arbitration mandate exists when the mandate "has been 'overridden by a contrary congressional command.'" *CompuCredit*, 132 S.Ct. at 669 (quoting *Shearson/Am. Express Inc. v McMahon*, 482 U.S. 220, 226 (1987)). The burden rests on the party challenging arbitration "to show that Congress intended to preclude a waiver of a judicial forum" for the claims at issue. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Such congressional intent "will be discoverable in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes." *Id.* at 26 (internal quotation marks omitted); *see also 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009).

In this case, Ziober argues that the plain text and legislative history of USERRA reveal that Congress intended to preclude the compelled arbitration of claims arising under its provisions. We join our sister circuits to have considered the question and conclude that neither the text nor legislative history evinces that intent. *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559 (6th Cir. 2008); *Garrett v. Circuit City Stores, Inc.*, 449 F.3d 672 (5th Cir. 2006); *see also Bodine v. Cook's Pest Control, Inc.*, No. 15-13233, 2016 WL 4056031 (11th Cir. July 29, 2016) (holding that a USERRA claim was

arbitrable even where the underlying arbitration agreement contained terms that violated the statute because those terms could be severed from the remainder of the agreement).

A.

Some historical context helps frame the discussion of USERRA's provisions. By the time Congress passed USERRA in 1994, the FAA had been in place for nearly seventy years, and the Supreme Court had made clear that "a contrary congressional command" was required to override the FAA's pro-arbitration mandate. *McMahon*, 482 U.S. at 226. Three years before USERRA's passage, the Supreme Court further held that an age discrimination claim arising under the Age Discrimination in Employment Act of 1967 could be subject to compelled arbitration. *Gilmer*, 500 U.S. at 23. Arbitration agreements in employment contracts were not uncommon at the time. *See, e.g., Erving v. Va. Squires Basketball Club*, 468 F.2d 1064, 1066–67 (2d Cir. 1972); *Dickstein v. duPont*, 443 F.2d 783, 784–85 (1st Cir. 1971).

Against that backdrop, Congress passed USERRA to broadly prohibit employment discrimination against, and to establish reemployment rights on behalf of, those who serve in the military and then reenter civilian life. *See* 38 U.S.C. §§ 4301–4334. Central to this appeal, 38 U.S.C. § 4302(b) provides:

> This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of

> additional prerequisites to the exercise of any
> such right or the receipt of any such benefit.

An individual may enforce his or her substantive rights against a private employer in one of two ways. 38 U.S.C. §§ 4322, 4323. First, an individual may file a complaint with the Secretary of Labor and request that the Secretary refer the matter to the Attorney General for further prosecution. *Id.* §§ 4322, 4323(a)(1). Second, an individual may directly pursue a civil action in federal court. *Id.* § 4323(a)(3).[1] Section 4323 gives district courts jurisdiction over USERRA claims, and it specifies the venue in which actions may proceed. *Id.* § 4323(b), (c).

Taken together, Ziober argues that those statutory provisions create a procedural right to sue in federal court that precludes a contractual agreement to arbitrate. We disagree. As an initial matter, it is well established that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *see also Circuit City*, 532 U.S. at 123. Ziober therefore loses no substantive protections by arbitrating his claims, and the only way he can prevail is if USERRA creates a procedural right to a judicial forum, protected by § 4302(b).

---

[1] We do not reach the question of how the arbitration agreement in this case would have affected any claims brought by the Attorney General pursuant to § 4323(a)(1). *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 295–96 (2002) (holding that the EEOC retained "the authority to pursue victim-specific [judicial] relief regardless of the forum that the employer and employee have chosen to resolve their disputes").

The Supreme Court's decision in *CompuCredit* forecloses the argument that USERRA includes a non-waivable procedural right to a judicial forum. In *CompuCredit*, the Court enforced a consumer agreement to arbitrate claims arising under the Credit Repair Organizations Act (CROA),which, similar to USERRA, prohibited the waiver of "any right of the consumer" under the Act. 132 S.Ct. at 669. Unlike USERRA, CROA explicitly provided that a consumer had "a right to sue" a credit repair organization. *Id.* Like USERRA, CROA included a section that created civil liability and described available relief in the context of a lawsuit in court. *Id.* at 670; *see also* 15 U.S.C. § 1679g (CROA's civil liability provisions). Despite the statute's seeming contemplation of a judicial forum for claims, the Supreme Court rejected the argument that CROA created a procedural right to bring a lawsuit in court. As the Court reasoned, "[i]f the mere formulation of the cause of action in this standard fashion were sufficient to establish the 'contrary congressional command' overriding the FAA, valid arbitration agreements covering federal causes of action would be rare indeed." 132 S.Ct. at 670 (citation omitted).

The Court in *CompuCredit* also looked to prior instances when it had enforced arbitration agreements despite a statute's contemplation of a judicial forum for suits. In *Gilmer*, for instance, the Supreme Court enforced an arbitration agreement with respect to a claim brought under the Age Discrimination in Employment Act (ADEA), even though the statute provided that "[a]ny person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." *CompuCredit*, 132 S.Ct. at 670; *see also* 29 U.S.C. § 626(c)(1). Before *Gilmer*, the Supreme Court also repeatedly enforced arbitration agreements when the

federal statute at issue created a cause of action in federal courts without mentioning agreements to arbitrate. *See CompuCredit*, 132 S.Ct. at 670–71 (discussing cases); *McMahon*, 482 U.S. at 227–28. In *CompuCredit*, the Court reaffirmed that such statutory provisions do not create a right to judicial enforcement of a claim. 132 S.Ct. at 671.

The same conclusion applies here. Like CROA, nothing in the plain text of USERRA "mentions mandatory arbitration or the FAA." *Landis*, 537 F.3d at 559. Instead, the statute describes civil liability in a standard fashion similar to the statutes considered in *CompuCredit*. As the Supreme Court remarked in *CompuCredit*, when Congress has issued a command precluding the arbitration of claims, it has done so in far more unmistakable terms. *See* 132 S.Ct. at 672 (citing 7 U.S.C. § 26(n)(2) ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section."); 15 U.S.C. § 1226(a)(2) ("Notwithstanding any other provision of law, whenever a motor vehicle franchise contract provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if after such controversy arises all parties to such controversy consent in writing to use arbitration to settle such controversy.")). Congress made no similarly plain statement in USERRA's text.

The closest that USERRA's text comes to addressing the compelled arbitration of claims is in § 4323(b)'s prohibition of "the establishment of additional prerequisites" to the vindication of substantive rights. However, as other circuits have recognized, that language directly relates to "union contracts and collective bargaining agreements" that require an employee to take an additional step or exhaust certain

remedies before filing suit. *Garrett*, 449 F.3d at 680; *see also Landis*, 537 F.3d at 564 (Cole, J., concurring) (concluding that Congress did not want USERRA plaintiffs to be forced "to submit to arbitration, mediation, or any grievance procedure as a *prerequisite to* filing suit in federal court"). But an individual arbitration agreement between an employer and an employee—operating like a forum selection clause—allows an employee to immediately seek to vindicate his or her rights in an arbitral forum, with no additional steps or exhaustion of other remedies required.

Ziober also argues that USERRA should be interpreted more liberally than other statutes given its focus on veterans. As Ziober accurately observes, the Supreme Court and this court have repeatedly affirmed the principle that statutes concerning federal reemployment rights for military members are "to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946); *see also Ala. Power Co. v. Davis*, 431 U.S. 581, 584 (1977); *Imel v. Laborers Pension Tr. Fund for N. Cal.*, 904 F.2d 1327, 1331–32 (9th Cir. 1990). We have also liberally construed a veterans reemployment statute to provide federal court jurisdiction over a claim. *Imel*, 904 F.2d at 1331–32. The principle of liberal construction, however, is designed to ensure that veterans may take full advantage of the substantive rights and protections provided by a statute. *See Ala. Power*, 431 U.S. at 585–87. Yet, as previously discussed, arbitration agreements like the one at issue in this case operate like forum selection clauses that do not require a party to give up any "substantive rights afforded by the statute." *Mitsubishi*, 473 U.S. at 628. Further, the enforcement of an arbitration agreement does not undermine the "social policies" underlying a given statute. *Gilmer*,

500 U.S. at 27–28. Instead, arbitration "can further" the same "broader social purposes" that litigation seeks to promote. *Id.* at 28.

Consistent with the other circuits to have considered the question, we therefore conclude that the plain text of USERRA does not preclude the compelled arbitration of disputes arising under its provisions. *See Garrett*, 449 F.3d at 677 (concluding that "[i]t is not evident from the statutory language that Congress intended to preclude arbitration by simply granting the possibility of a federal judicial forum"); *Landis*, 537 F.3d at 562 (observing that nothing in USERRA's text indicates that Congress chose to exempt the statute "from the policy favoring arbitration"); *see also Bodine*, 2016 WL 4056031, at \*5 (affirming a district court's order compelling arbitration of USERRA claims after severing from the arbitration agreement terms that violated the statute)[2].

### B.

Even if we were to conclude that USERRA's text was ambiguous on the question, the limited legislative history cited by Ziober also does not satisfy his burden "to show that Congress intended to preclude a waiver of a judicial forum." *Gilmer*, 500 U.S. at 26. Ziober relies largely on a paragraph in a House Committee Report concerning the scope of § 4302(b). The paragraph states:

---

[2] The parties in *Bodine* "expressly agree[d] that USERRA claims are arbitrable," and limited their argument to the enforceability of the specific arbitration agreement at issue. 2016 WL 4056031, at \*3

Section 4302(b) would reaffirm a general preemption as to State and local laws and ordinances, as well as to employer practices and agreements, which provide fewer rights or otherwise limit rights provided under amended chapter 43 or put additional conditions on those rights. *See Peel v. Florida Department of Transportation*, 600 F.2d 1070 (5th Cir. 1979); *Cronin v. Police Dept. of City of New York*, 675 F. Supp. 847 (S.D. N.Y. 1987) and *Fishgold*, supra, 328 U.S. at 285, which provide that no employer practice or agreement can reduce, limit or eliminate any right under chapter 43. Moreover, this section would reaffirm that additional resort to mechanisms such as grievance procedures or arbitration or similar administrative appeals is not required. *See McKinney v. Missouri–K-T R.Co.*, 357 U.S. 265, 270 (1958); *Beckley v. Lipe-Rollway Corp.*, 448 F. Supp. 563, 567 (N.D.N.Y. 1978). It is the Committee's intent that, even if a person protected under the Act resorts to arbitration, any arbitration decision shall not be binding as a matter of law. *See Kidder v. Eastern Airlines, Inc.*, 469 F. Supp. 1060, 1064–65 (S.D. Fla. 1978).

H.R. Rep. No. 103-65(I), at 20 (1993).

The passage, however, is consistent with our analysis of § 4302(b)'s express prohibition on the creation of "additional prerequisites" for the vindication of substantive rights under the statute. As the legislative history confirms, Congress's concern was with contractual agreements that forced an

employee to take an additional step (i.e., exhausting contractual grievance procedures) before bringing suit. That concern, however, does not reach individual agreements to arbitrate like the one at issue in this case, because such agreements do not require a plaintiff to take any additional steps before seeking to vindicate his or her rights in an arbitral forum. *See Garrett*, 449 F.3d at 680 (remarking that the cited legislative history "strongly suggests that Congress intended § 4302(b) only to prohibit the limiting of USERRA's substantive rights by union contracts and collective bargaining agreements, and that Congress did not refer to arbitration agreements between an employer and individual employee"); *Landis*, 537 F.3d at 562–63.

The legislative history's citation to *McKinney v. Missouri-Kansas-Texas Railroad Co.* confirms that reading. The Supreme Court in *McKinney* considered a USERRA predecessor statute and held that a collective bargaining agreement could not require an employee to "exhaust other avenues of relief" before filing suit. 357 U.S. 265, 270 (1958). *McKinney*, however, did not address arbitration agreements that operate similar to forum selection clauses like the one at issue in this case. And as the Supreme Court has since made plain, the act of bringing a claim in arbitration allows a plaintiff to vindicate his or her substantive statutory rights to the same extent as filing a lawsuit in federal court. *See Gilmer*, 500 U.S. at 30 (rejecting the argument that arbitration is a "method of weakening the protections afforded in the substantive law to would-be complainants").

We therefore conclude that Ziober has failed to establish that the legislative history evinces Congress's intent to

prevent the enforcement of the arbitration agreement he signed.[3]

### IV.

We acknowledge the possibility that Congress did not want "members of our armed forces to submit to binding, coercive arbitration agreements." *Landis*, 537 F.3d at 564 (Cole, J., concurring). That intention, however, is not expressed in the statute itself, or in the legislative history. We therefore affirm the district court's order compelling arbitration and dismissing Ziober's complaint.

**AFFIRMED.**

WATFORD, Circuit Judge, concurring:

I join the court's opinion, but I have doubts about whether we are reaching the right result.

A strong argument can be made that the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) contains a "contrary congressional command" overriding the Federal Arbitration Act's pro-arbitration

---

[3] Even if the House Committee Report more directly addressed individual arbitration agreements, no similar language appears in the relevant Senate Report, or any other legislative history cited by the parties. *See* S. Rep. No. 103-158, at 41 (1993). We agree with the Fifth Circuit that "[s]uch a scant record, unless explicitly and on point, hardly proves Congress's intention toward all cases involving arbitration." *Garrett*, 449 F.3d at 679.

mandate. *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012). USERRA contains a provision that renders unenforceable any contract or agreement that "reduces, limits, or eliminates in any manner any right . . . provided by this chapter." 38 U.S.C. § 4302(b). Kevin Ziober's contract with his employer requires him to submit USERRA claims to final and binding arbitration. That contract certainly "limits"—and for all practical purposes "eliminates"—his right to litigate those claims in court. So the threshold question is whether USERRA confers on servicemembers the right to litigate USERRA claims in court.

The statute seems to confer such a right. Section 4323 authorizes servicemembers to "commence an action for relief" against a private employer, and it says, as relevant here, "[i]n the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action." 38 U.S.C. § 4323(a)(3), (b)(3). I'm not sure what additional language would be necessary to create a right to bring an action in court. If USERRA confers the right to a judicial forum, then § 4302(b) arguably renders invalid any pre-dispute waiver of that right through an agreement to submit USERRA claims to arbitration.

*CompuCredit* may seem controlling at first glance, but that case is not on all fours with this one. The statute at issue there, the Credit Repair Organizations Act, included a non-waiver provision that invalidated a consumer's waiver of any of the rights conferred by the statute, but the Supreme Court held that the statute did *not* confer the right to bring an action in court. *CompuCredit*, 132 S. Ct. at 669–70. The other statutes to which the Court referred in *CompuCredit*—the Age Discrimination in Employment Act, the Racketeer Influenced and Corrupt Organizations Act, and the Clayton

Act—all involved the reverse situation: Each statute conferred the right to bring an action in court, but each lacked a non-waiver provision. *See id.* at 670–71. USERRA is different because it contains both a non-waiver provision (§ 4302(b)) and a provision conferring the right to bring an action in court.

I concede, though, that the proper interpretation of § 4302(b) is open to debate. On the one hand, the Department of Labor, the agency charged with administering USERRA, has read § 4302(b) as including "a prohibition against the waiver in an arbitration agreement of an employee's right to bring a USERRA suit in Federal court." 70 Fed. Reg. 75246, 75257 (Dec. 19, 2005). That reading is consistent with a long line of authority holding that legislation benefitting servicemembers is to be liberally construed in their favor. *See, e.g.*, *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 441 (2011); *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946). On the other hand, § 4302(b) is general in scope; it does not explicitly address waiver of the right to a judicial forum. So there is room to argue that Congress intended to preclude only the waiver of substantive rights conferred by the statute, not the waiver of procedural rights such as the right to bring an action in court. Nothing in the legislative history of USERRA definitively resolves this ambiguity.

With reasonable arguments to be made on both sides, I don't think it's prudent for us to create a circuit split by reversing the district court's ruling, particularly given the ease with which Congress can fix this problem. If we and other circuits have misinterpreted the scope of § 4302(b), Congress can amend the statute to make clear that it does render pre-dispute agreements to arbitrate USERRA claims

unenforceable. *See Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 565 (6th Cir. 2008) (Cole, J., concurring). Indeed, at least one amendment has been proposed recently that would do just that. *See* 162 Cong. Rec. S3205 (daily ed. May 25, 2016) (proposed amendment 4180 to Senate Bill 2943). If we have erred by construing § 4302(b) too narrowly, Congress will surely let us know.