[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  17-10944
_____

D.C. Docket No. 1:16-cv-00378-KD-C

OUTOKUMPU STAINLESS USA, LLC,
SOMPO JAPAN INSURANCE COMPANY OF AMERICA,
as subrogee of Outokumpu Stainless USA, LLC,
POHJOLA INSURANCE LIMITED,
AIGEL EUROPE LIMITED,
as subrogee of Outokumpu Oyj,
TAPIOLA GENERAL MUTUAL INSURANCE COMPANY,
as subrogee of Outokumpu Oyj,
AXA CORPORATE SOLUTIONS ASSURANCE SA UK BRANCH,
as subrogee of Outokumpu Oyi,
HDI GERLING UK BRANCH,
as subrogee of Outokumpu Oyj,
MSI CORPORATE CAPITAL LTD.,
as sole Corporate Member of Syndicate 3210,
as subrogee of Outokumpu Oyj,
ROYAL & SUN ALLIANCE, PLC,
as subrogee of Outokumpu Oyj,

Plaintiffs – Appellants,

SOMPO JAPAN INSURANCE COMPANY OF AMERICA, et al.,

Plaintiffs,

versus

CONVERTEAM SAS,
a foreign corporation now known as
GE Energy Power Conversion France SAS, Corp.,

Defendant – Appellee

_____

Appeals from the United States District Court
for the Southern District of Alabama

_____

(August 30, 2018)

Before TJOFLAT and JULIE CARNES, Circuit Judges, and BLOOM,[*] District Judge.

BLOOM, District Judge:

This appeal requires us to examine seemingly interrelated—but actually quite separate—questions under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention" or "Convention"): (1) whether an action between a buyer and a sub-contractor of a seller "relates to" an arbitration agreement signed by the buyer and seller sufficient to establish federal subject matter jurisdiction, and (2) whether a non-signatory sub-contractor may compel arbitration against the buyer under that arbitration agreement. In following our sister circuits, we conclude that these inquiries require a bifurcated analysis. *Beiser v. Weyler*, 284 F.3d 665 (5th Cir. 2002); *Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657 (2d Cir. 2005). Where jurisdiction is

_____

[*] Honorable Beth Bloom, United States District Judge for the Southern District of Florida, sitting by designation.

2

challenged on a motion to remand, the district court shall first perform a limited inquiry on the face of the pleadings and the removal notice to determine whether the suit "relates to" an arbitration agreement falling under the Convention under the factors articulated in *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir. 2005).  On a motion to compel arbitration, the district court must engage in a more rigorous analysis of the *Bautista* factors to determine whether the parties before the district court entered into an agreement under the meaning of the Convention to arbitrate their dispute.

## I.    FACTUAL BACKGROUND

Plaintiff Outokumpu Stainless, LLC ("Outokumpu") operates a steel plant in Calvert, Alabama.  The facility contains three "cold rolling mills," or CRMs, required for manufacturing and processing certain steel products.  In November 2007, while the plant was still under construction, Outokumpu's predecessor ThyssenKrupp Stainless USA LLC entered into three contracts with Fives (then F.L. Industries, Inc.) to provide three different sized CRMs ("Outokumpu-Fives Contracts" or the "Contracts").  The Outokumpu-Fives Contracts each contain an arbitration clause:

> All disputes arising between both parties in connection with or in the performance of the Contract shall be settled through friendly consultation between both parties.  In case no agreement can be reached through consultation after a maximum period of 30 days or as soon as one of

the parties involved appeals for the arbitration tribunal the dispute shall be considered as failed and any such dispute shall be submitted to arbitration for settlement.

The arbitration clause further requires that the arbitration take place in Dusseldorf, Germany in accordance with the Rules of Arbitration of the International Chamber of Commerce and that the forum apply the substantive law of Germany.

The Contracts define Outokumpu as the "Buyer" and Fives as the "Seller," and state that "Buyer and Seller [are] also referred to individually as 'Party' and collectively as 'Parties.'" The Contracts further provide that: "When Seller is mentioned it shall be understood as Sub-contractors included, except if expressly stated otherwise." The Contracts define "Sub-contractor" as "any person (other than the Seller) used by the Seller for the supply of any part of the Contract Equipment, or any person to whom any part of the Contract has been sub-let by the Seller[.]" Appended to each Contract is a subcontractor list that enumerates the "Preferred Brands or Manufacturers" for Outokumpu and Fives; Defendant GE Energy Conversion France SAS ("GE Energy"), formerly known as Converteam SAS, is on that list.

Each CRM requires three motors, and Fives subcontracted with GE Energy to supply all nine motors. The motors were manufactured in France and delivered and installed in Alabama between 2011 and 2012. However, by June 2014, the

4

motors began to fail.  Despite inspections and emergency repairs, motors from all three of the CRMs failed by August 2015.

Outokumpu approached Fives about replacing or repairing the motors. Through correspondence between GE Energy and Fives, Outokumpu discovered that GE Energy, Fives, and a third company, DMS SA, had entered into a subcontractor agreement, the "Agreement for Consortial Cooperation," three weeks after the Outokumpu-Fives contracts were executed.  The Consortial Agreement had "the aim of optimizing the chances of the parties to be awarded the project."  Under the Consortial Agreement, GE Energy, Fives, and DMS agreed that "[a]ny and all stipulations of the [Outokumpu-Fives Contracts] shall apply *mutatis mutandis* to each party for its own scope of supply and services."

The Consortial Agreement in turn contains its own arbitration clause as follows:

> The PARTIES shall endeavor to settle any dispute, controversy or claim arising out of or in connection with this AGREEMENT or with the [Outokumpu-Fives Contracts] or the breach, interpretation or validity of this Agreement amicably.
>
> If not agreement settlement can be reached within a reasonable time, either PARTY may commence arbitration after serving a 15 days written notice to the other PARTY.  Such dispute shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in

5

> accordance with the said Rules.  The place of arbitration shall be Paris.
>
> . . .
>
> In the event a dispute occurs between [Outokumpu] and [Fives], which results in an arbitration proceeding under the [Outokumpu-Fives Contracts], [Fives] shall have the right to join the other PARTY into the arbitration proceedings with [Outokumpu] and the PARTY so joined hereby agrees that it shall be bound by the arbitral award, as long as the latter is given the opportunity to defend its interest in the arbitration procedure held under the [Outokumpu-Fives Contracts].

Under the Consortial Agreement, Fives was designated the "Leading Party" of the consortium and was tasked with representing the interests of the consortium.

## II.    THE DISTRICT COURT PROCEEDINGS

When Outokumpu was unable to resolve the issues related to the motors with GE Energy, Outokumpu and its insurers filed suit in the Circuit Court of Mobile, Alabama on June 10, 2016.  GE Energy timely removed based on federal subject matter jurisdiction under 9 U.S.C. § 205 and diversity jurisdiction based on fraudulent joinder of Outokumpu's insurers.  Outokumpu and the insurers moved to remand, and GE Energy moved to dismiss and compel arbitration.  Outokumpu also sought limited discovery regarding the Consortial Agreement.  The district

court denied the motion to remand and the motion for limited discovery, and granted the motions to compel and dismiss.

As to the motion to remand, the district court, adopting the magistrate's report and recommendation, found removal proper under the New York Convention and the Federal Arbitration Act ("FAA") since this case "relates to" the arbitration agreement found in the Outokumpu-Fives Contracts and that arbitration agreement "fall[s] under the Convention." As to the motion to compel arbitration, the district court found that each of the four jurisdictional prerequisites under *Bautista* was met and no affirmative defense applied. Specifically, as to the first prerequisite, the district court found there was an "agreement in writing," signed by the Outokumpu and GE Energy, since Outokumpu signed the Contracts and GE Energy, as a sub-contractor, was not expressly excluded from the arbitration provision. The second prerequisite was not contested by the parties. As to the third and fourth prerequisite, the district court found that the arbitration agreement arose out of a legal commercial relationship between Outokumpu and Fives and that that relationship had some reasonable relationship with a foreign state. Accordingly, the district court granted the motion to compel and dismissed the action.

## III.   STANDARD OF REVIEW

7

We review *de novo* both the district court's denial of the motion to remand and the district court's grant of the motion to compel arbitration and dismiss. *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1283 (11th Cir. 2015) (citing *Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1204 (11th Cir. 2008) and *Bautista*, 396 F.3d at 1294). The same *de novo* standard applies to the district court's interpretation of treaties and federal law. *In re Clerici*, 481 F.3d 1324, 1331 (11th Cir. 2007). We review the district court's denial of Outokumpu's request for discovery for abuse of discretion. *Holloman v. Mail–Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006).

## IV.    THE MOTION TO REMAND

Federal policy favors arbitral dispute resolution. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). Congress enacted the FAA to counter widespread hostility to arbitration and encourage the recognition and enforcement of arbitration awards. *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1284 (11th Cir. 2015) (citing *Am. Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2308–09 (2013)). In 1970, Congress amended the FAA to incorporate the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38. *See* 9 U.S.C. §§ 201 *et seq.* These amendments

8

provide for the recognition of foreign arbitration agreements and arbitral awards. 9 U.S.C. §§ 201 *et seq*.

In amending the FAA, Congress further sought to promote the development of a uniform body of federal law under the Convention. *Beiser v. Weyler*, 284 F.3d 665, 672 (5th Cir. 2002). Section 203 provides that district courts have original jurisdiction over an action falling under the Convention. Congress also included broad grounds for removal "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention." 9 U.S.C. § 205.

The phrase "falling under the convention" is defined in Section 202:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

9 U.S.C. § 202. "Relates to," however, is not defined in the FAA or the Convention, and we have yet to examine its meaning.

Our sister circuits, however, have had occasion to interpret this phrase. In *Beiser*, a consulting company's principal sued in his individual capacity regarding

9

an oil investment.  284 F.3d at 666.  The investment was financed by an agreement between the consulting company and a non-party which contained an arbitration provision.  The plaintiff challenged jurisdiction as he did not sign the arbitration agreement.  The Fifth Circuit, after noting that the plain meaning of " 'relates to' sweeps broadly," held that "whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' to the plaintiff's suit" sufficient for removal jurisdiction.  *Id.* at 669 (emphasis in original).

Both the Eighth and Ninth Circuits have followed the Fifth Circuit.  *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 844 (8th Cir. 2012) ("Joining the Fifth and Ninth Circuits, this court holds that a case may be removed under § 205 if the arbitration could conceivably affect the outcome of the case."); *Infuturia Glob. Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1137–38 (9th Cir. 2011) (noting that the Fifth Circuit "construed this language to mean that 'whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement "relates to" the plaintiff's suit.'  We agree with this interpretation" (emphasis in original) (quoting *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002))).

We join the Fifth, Eighth, and Ninth Circuits and agree that the "relates to" language of Section 205 provides for broad removability of cases to federal court.

While the link between the arbitration agreement and the dispute is not boundless, the arbitration agreement need only be sufficiently related to the dispute such that it conceivably affects the outcome of the case. Thus, as long as the argument that the case "relates to" the arbitration agreement is not immaterial, frivolous, or made solely to obtain jurisdiction, the relatedness requirement is met for purposes of federal subject matter jurisdiction.

This initial jurisdictional inquiry is distinct from a determination of whether the parties are bound to arbitrate. *Bautista v. Star Cruises*, 396 F.3d 1289, 1301 (11th Cir. 2005); *see also Sarhank*, 404 F.3d 660, *Beiser v. Weyler*, 284 F.3d 665, 671 (5th Cir. 2002). As we have noted, "Section 205 does not require a district court to review the putative arbitration agreement—or investigate the validity of the signatures thereon—before assuming jurisdiction: 'The language of § 205 strongly suggests that Congress intended that district courts continue to be able to assess their jurisdiction from the pleadings alone.'" *Bautista*, 396 F.3d at 1301 (quoting *Beiser*, 284 F.3d at 671). Thus, in determining jurisdiction the district court need not—and should not—examine whether the arbitration agreement binds the parties before it. Rather, the "relates to" inquiry requires the court to determine whether, on the face of the pleadings and the removal notice, there is a non-frivolous claim that the lawsuit relates to an arbitration agreement that "falls under the Convention."

11

Accordingly, upon removal the district court shall engage in a two-step inquiry to determine jurisdiction, limiting its examination to the pleadings and the removal notice. 9 U.S.C. § 205. First, the district court should determine whether the notice of removal describes an arbitration agreement that may "fall[] under the Convention." To do so, the district court employs the test articulated in *Bautista* to the four corners of the arbitration agreement and asks whether the removing party has articulated a non-frivolous basis (1) that there is an agreement in writing, that is, an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams; (2) that the agreement provides for arbitration in the territory of a signatory of the Convention; (3) that the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) that a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states. *See Bautista*, 396 F.3d at 1295–96 n.7 & 9. Second, the district court must determine whether there is a non-frivolous basis to conclude that agreement sufficiently "relates to" the case before the court such that the agreement to arbitrate could conceivably affect the outcome of the case.

The district court held that Outokumpu's claims relate to an arbitration agreement falling under the Convention. The parties concede that the second and third *Bautista* factors are met, and thus we need only examine the first and fourth

12

factors.  As to the first factor, GE Energy has identified the arbitration clauses in the Outokumpu-Fives Contracts.  Because the Contracts are signed by Outokumpu and Fives, the Contracts satisfy the first factor.

As to the fourth factor, on the face of the complaint and removal notice, the Outokumpu-Fives Contracts govern a commercial relationship that has a reasonable relation to one or more foreign states.  The Contracts contemplate performance by certain foreign subcontractors in foreign states.  Moreover, the initial negotiations regarding the Outokumpu-Fives Contracts occurred in Germany.  While these arguments may not prevail on a motion to compel arbitration between the parties before the district court, they are sufficient to meet GE Energy's burden opposing remand.

And this lawsuit sufficiently "relates to" the arbitration agreement in the Outokumpu-Fives Contracts.  As alleged in the pleadings, the present lawsuit against GE Energy concerns the performance of the Outokumpu-Fives Contracts, and the arbitration agreement contained in those Contracts is sufficiently related to the instant dispute such that it could conceivably affect the outcome of this case.

This approach is consistent with our removal jurisprudence, which confines its analysis to the face of the pleadings.  *Bautista*, 396 F.3d at 1301.  Nothing in 9 U.S.C. § 201 *et seq.* expresses an intent of Congress for the courts to engage in a uniquely rigorous inquiry upon removal of cases on the basis of the Convention,

13

and in fact, that FAA explicitly states that the "procedure for removal of causes otherwise provided by law shall apply." *Id.* § 205.  Accordingly, we decline to read such a standard into the statute.

## V.    THE MOTION TO COMPEL ARBITRATION

Having found that the district court properly exercised jurisdiction, we now turn to the question of whether Outokumpu may be compelled to arbitrate its dispute with GE Energy.  Under 9 U.S.C. § 206, a  "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."  While only a "very limited inquiry" is required to determine whether to compel arbitration, *Bautista*, 396 F.3d at 1295, this inquiry is necessarily more rigorous than on a motion to remand because the district court must determine whether the parties before the court agreed to arbitrate their dispute.

Again, a party may compel arbitration under the Convention only if:

(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

14

*Bautista*, 396 F.3d at 1294 n.7.  Here, our inquiry starts and ends with the first factor because we find that there is no agreement in writing within the meaning of the Convention.  Under the New York Convention, "[e]ach Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration."  New York Convention, Article II, ¶ 1.  Article II further states that "[t]he term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." New York Convention, Article II, ¶ 2.  The requirement that the agreement to arbitrate be "signed by the parties" applies to both an arbitral clause and an arbitration agreement.  *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996 (9th Cir. 2017); *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 449 (3d Cir. 2003); *Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 218 (2d Cir. 1999), *partially abrogated on other grounds by Sarhank*, 404 F.3d at 660 n.2.  *But see Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666 (5th Cir. 1994) (reading "signed by the parties" to only modify "an arbitration agreement" and not "an arbitral clause in a contract" and finding a signature was not required to compel arbitration under an arbitration provision of an insurance contract).

15

The district court determined that GE Energy and Outokumpu were parties to the Contracts by tracing the definitions of "Buyer" and "Seller," which included subcontractors unless explicitly stated otherwise, and the definition of "parties" as "Buyer" and "Seller." Inserting these definitions into the arbitration clause, the district court found that there was an agreement in writing under the meaning of the Convention which required Outokumpu and GE Energy to arbitrate.

However, GE Energy is undeniably not a signatory to the Contracts. At the time the Contracts were signed by Outokumpu and Fives, GE Energy was a stranger to the Contracts and, at most, a potential subcontractor. Private parties—here Outokumpu and Fives—cannot contract around the Convention's requirement that the parties *actually sign* an agreement to arbitrate their disputes in order to compel arbitration. New York Convention, Article II, ¶ 1; *see also Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286 (11th Cir. 2004) (finding sample wording, not signed by the parties, did not satisfy the "agreement in writing" requirement); *Yang*, 876 F.3d at 1001 (finding "agreement in writing" requirement not satisfied to compel arbitration between a non-signatory company and signatory employee).

16

Accordingly, we hold that, to compel arbitration, the Convention requires that the arbitration agreement be signed by the parties before the Court or their privities.[1]

This requirement is consistent with our prior decisions. In *Czarina*, 358 F.3d at 1289, 1293, we found on a motion to confirm an arbitration award that an unsigned, unexecuted "sample wording" containing an arbitral clause could not satisfy the "agreement in writing" requirement, even when the arbitration panel found the sample wording sufficient. We held that the parties in *Czarina* could not avoid the "agreement in writing" requirement based on an erroneous arbitration finding "because accepting it would eviscerate an important principle of United States and international arbitration law." *Id.* at 1293. So too here: GE Energy cannot avoid U.S. and international arbitration law that require that the parties sign an agreement to arbitrate the dispute between them.

The fact that non-signatory GE Energy, and not signatory Outokumpu, seeks to enforce the arbitration provision does not alter our analysis. While the FAA "places arbitration agreements on equal footing with all other contracts and sets forth a clear presumption—'a national policy'—in favor of arbitration," *Parnell v.*

---

[1] Nothing in this opinion disturbs our holdings that an arbitration agreement is "signed by the parties" when signed by a party's privy or incorporated by reference in an arbitration agreement. *Bautista v. Star Cruises*, 396 F.3d 1289, 1293 (11th Cir. 2005); *Doe v. Princess Cruise Lines, Ltd.,* 657 F.3d 1204, 1213 (11th Cir. 2011).

*CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)), the Convention, as codified in Chapter 2 of the FAA, only allows the enforcement of agreements in writing signed by the parties and Congress has specified that the Convention trumps Chapter 1 of the FAA where the two are in conflict. *See* 9 U.S.C. § 208 ("Chapter 1 applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States."). Although parties can compel arbitration through estoppel under Chapter 1 of the FAA, estoppel is only available under Chapter 1 because Chapter 1 does not expressly restrict arbitration to the specific parties to an agreement. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31, 129 S. Ct. 1896, 1902 (2009). But the Convention imposes precisely such a restriction. New York Convention, Article II, ¶ 2 (requiring that an "agreement in writing" be "signed by the parties or contained in an exchange of letters or telegrams"). Thus, GE Energy cannot compel Outokumpu to arbitrate through estoppel. For this same reason, GE Energy also cannot compel arbitration through a third-party beneficiary theory because, again, the Convention requires that the agreement to arbitrate be signed by the parties (or exchanged in letters or telegrams).

GE Energy's argument that it may compel arbitration based on the Consortial Agreement fares no better. Even if GE Energy had agreed with Fives

18

and the third subcontractor DMS that it would arbitrate any disputes arising out of the Consortial Agreement or the Contracts, or that GE Energy would be bound to any arbitration agreement in the Contracts, these agreements were entered into unbeknownst to Outokumpu.  GE Energy's unilateral acquiescence to arbitrate with Outokumpu is not an agreement "signed by [] parties" Outokumpu and GE Energy.  And though the Consortial Agreement may have established that Fives could act as an agent of GE Energy in its dealings with Outokumpu, Fives did not become GE Energy's agent until *after* Fives and Outokumpu had already signed the Outokumpu-Fives Contracts. As such, Fives did not sign the Contracts on behalf of GE Energy as GE Energy's agent.  Altogether, in the absence of a signed agreement, Outokumpu cannot be compelled to arbitrate its dispute with GE Energy under the Convention.

In its supplemental briefing on appeal, GE Energy raises for the first time the argument that it is entitled to compel arbitration under Chapter 1 of the FAA. This issue was not raised before the district court and was not presented in the parties' initial appellate briefing.  Accordingly, we decline to consider it now.

## VI.    MOTION FOR LIMITED DISCOVERY

Outokumpu also appeals the district court's denial of its motion for limited discovery into the corporate relationship between GE Energy, Converteam, and the Consortial Agreement.  "[A] district court is allowed a range of choice in such

19

matters, and we will not second-guess the district court's actions unless they reflect a clear error of judgment." *Holloman v. Mail–Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006) (internal quotation marks omitted). We find no clear error in the district court's determination that such discovery was unnecessary given the allegations in the complaint and the agreement under which GE Energy sought to compel arbitration.

## VII. CONCLUSION

Based on the foregoing, we AFFIRM the district court's denial of the motion to remand and denial of limited discovery, but REVERSE and REMAND the district court's order compelling arbitration for further proceedings consistent with this opinion.

**SO ORDERED.**