DONALD L. GRAHAM, UNITED STATES DISTRICT JUDGE
*1258 THIS CAUSE comes before the Court upon Defendants Certain Underwriters At Lloyd's, London et al. 's Motion to Compel Arbitration [D.E. 3], and Plaintiff Ytech 180 Units Miami Beach Investments LLC's Motion for Remand and Incorporated Memorandum of Law [D.E. 4].
THE COURT has considered the motions, responses thereto, pertinent portions of the record, and is otherwise fully advised in the premises. Based thereon, Defendants' Motion to Compel Arbitration [D.E. 3] is GRANTED and Plaintiff's Motion for Remand and Incorporated Memorandum of Law [D.E. 4] is DENIED.
THIS MATTER arises from a series of all-risk insurance contracts collectively referred to as the "Policy." [See D.E. 1-2; 1]. Defendants issued the Policy to Plaintiff. [See D.E. 1-2]. Plaintiff is a U.S. limited liability company. [D.E. 1-3]. At least two Defendants are not U.S. citizens. [D.E. 1].
The Policy insures 22 buildings owned by Plaintiff and known as the Grand Beach Apartments located in Miami Beach, Florida (the "Property"). [D.E. 1-3]. The Property suffered significant damages on September 10, 2017 because of Hurricane Irma. [D.E. 1-3]. Plaintiff sought coverage under the Policy for the damages sustained and requested that the claim be submitted to appraisal. [D.E. 1]. Defendants denied Plaintiff's request, arguing that the Policy does not provide for an appraisal. [D.E. 1]. According to Defendants, Plaintiff's claim must be resolved through arbitration. [D.E. 1].
The Policy contains an arbitration clause, which states in pertinent part:
SECTION VII - CONDITIONS
***
C. ARBITRATION CLAUSE: All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.
***
The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.
[D.E. 1-2 at 39 (hereinafter, the "Arbitration Clause") ].
I. PROCEDURAL BACKGROUND AND CONTENTIONS OF THE PARTIES
Plaintiff filed a single-count complaint in the Eleventh Judicial Circuit of Miami-Dade County alleging that the Policy's Arbitration Clause is ambiguous and seeking various declarations from the Court. [D.E. 1-3]. The gravamen of Plaintiff's claim is that the Service of Suit Provision, Applicable Law Provision, and the Suits Against Us Provision (collectively, the "Provisions") conflict with the Arbitration Clause rendering the Arbitration Clause unenforceable.
Defendants removed this action to this Court pursuant to 28 U.S.C. § 1441 citing federal question jurisdiction, 28 U.S.C. § 1331, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§ 201 - 208. In its Motion for Remand, *1259 Plaintiff avers that removal is premature, and the Convention's jurisdictional prerequisites are not met.
Shortly after removal, Defendants moved under the Convention to stay or dismiss this action and compel arbitration pursuant to the terms of the Arbitration Clause. According to the Defendants, the clear and unmistakable terms of the Arbitration Clause commits issues of validity and enforceability to an arbitrator. Plaintiff disagrees. Furthermore, Plaintiff submits that the Motion to Compel is also premature.
II. DISCUSSION
A. The Motion to Remand
Plaintiff moves to remand this action arguing that this Court cannot exercise subject-matter jurisdiction unless and until the state court determines that the Arbitration Clause is valid and enforceable. Highlighting the purported inconsistencies between the Provisions and the Arbitration Clause, Plaintiff avers that the Policy is ambiguous. According to Plaintiff, the Defendants' contention that the Convention's jurisdictional prerequisites are met is based on the conclusory assumption that the Arbitration Clause is valid. Notably, Plaintiff cites no case for the proposition that a state court must find that the Arbitration Clause is valid and enforceable before a district court may exercise federal subject-matter jurisdiction under the Convention.
Contrary to Plaintiff's contentions, federal courts have original jurisdiction over any action or proceeding falling under the Convention regardless of the amount in controversy. Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1440 (11th Cir. 1998) (citing 9 U.S.C. § 203 ; H.R.Rep. No. 91-1181, at 2 (1970), reprinted in 1970 U.S.C.C.A.N. 3601, 3602). Such cases confer original subject-matter jurisdiction upon a district court because they are "deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203 ; Bautista v. Star Cruises, 396 F.3d 1289, 1294 (11th Cir. 2005). Furthermore, the Convention "does not require a district court to review the putative arbitration agreement-or investigate the validity of the signatures thereon-before assuming jurisdiction: 'The language of § 205 strongly suggests that Congress intended that district courts continue to be able to assess their jurisdiction from the pleadings alone.' " Bautista, 396 F.3d at 1301 (citing Beiser v. Weyler, 284 F.3d 665, 671 (5th Cir.2002) ).
Accordingly, the Court will decide the jurisdictional issue before turning to Defendant's Motion to Compel Arbitration. See Czarina, L.L.C. v. W.F. Poe Syndicate, 358 F.3d 1286, 1291 (11th Cir. 2004) (noting that federal courts must "first assure themselves of their jurisdiction by deciding whether the agreement-in-writing requirement has been met" before "enforcing an [arbitration] agreement or confirming an award under the Convention"). The Court begins its analysis with an overview of the Federal Arbitration Act ("FAA") and the Convention.
1. The FAA and the Convention
The FAA applies to all "written" agreements to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367-68 (11th Cir. 2005). The United States Supreme Court has expressed a liberal federal policy favoring the enforcement of arbitration provisions, especially in the field of international commerce.
*1260 Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (noting that the presumption in favor of arbitration carries "special force" when international commerce is involved, because the United States is also a signatory to the Convention).
The Convention is incorporated into federal law by Chapter Two of the FAA. 9 U.S.C. §§ 201 - 208. Section 202 defines an arbitration agreement or award that "falls under" the Convention as:
An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.
9 U.S.C.A. § 202. The Convention aims "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). The Convention also serves the purpose of "reliev[ing] congestion in the courts and [ ] provid[ing] parties with an alternative method for dispute resolution that is speedier and less costly than litigation." Indus. Risk Insurers, 141 F.3d at 1440.
As an exercise of the Congress' treaty power and as federal law, "[t]he Convention must be enforced according to its terms over all prior inconsistent rules of law." Indus. Risk Insurers, 141 F.3d 1434 at 1440 (quoting Sedco, Inc., 767 F.2d at 1145 ). Accordingly, to determine whether the district court has jurisdiction over an action to compel arbitration, courts look to the language of the Convention. Czarina, L.L.C., 358 F.3d at 1291.
2. Removal Under the Convention
The Convention provides for removal "where the subject matter of an action or proceeding pending in a state court relates to an arbitration agreement or award falling under the Convention." Outokumpu Stainless USA, LLC v. Converteam SAS, 902 F.3d 1316, 1323 (11th Cir. 2018) (citing 9 U.S.C. § 205 ) (emphasis added). The Eleventh Circuit has interpreted the "relates to" language of Section 205 to allow "broad removability of cases in federal court." Id. (noting that the arbitration agreement need only be sufficiently related to the dispute such that it conceivably affects the outcome of the case). "[A]s long as the argument that the case 'relates to' the arbitration agreement is not immaterial, frivolous, or made solely to obtain jurisdiction, the relatedness requirement is met for purposes of federal subject matter jurisdiction." Id. at 1323-24. To that end, court's assessing removability must conduct a "limited jurisdictional inquiry, an inquiry colored by a strong preference for arbitration." See Bautista, 396 F.3d at 1301.
Upon removal under the Convention, district courts must engage in a two-step inquiry to determine jurisdiction, limiting its examination to the pleadings and the notice of removal. Outokumpu Stainless USA, LLC, 902 F.3d at 1324. First, the court assesses whether the notice of removal describes an arbitration *1261 agreement that may "fall under the Convention." Id. To do so, the Court considers whether the removing party has articulated a non-frivolous bases that (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory to the Convention; (3) the agreement to arbitrate arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen. See id.; Bautista, 396 F.3d 1289, 1295 n. 7. Second, the district court must determine whether on the face of the removal and the pleadings, there is a non-frivolous basis to conclude that the agreement "relates to" an arbitration agreement that "falls under the Convention." Outokumpu Stainless USA, LLC, 902 F.3d at 1324.
Aside from the analysis above, "the procedure for removal of causes otherwise provided by law shall apply," 9 U.S.C.A. § 205, with limited exceptions.[1] Consequently, Defendants bear the burden of establishing, by a preponderance of the evidence, that the jurisdictional requirements under the Convention are met. See Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1373 (11th Cir. 1998). Regarding the first step of the jurisdictional inquiry, Defendants submit (and Plaintiff does not dispute) that the second, third, and fourth jurisdictional prerequisites are met.[2] Therefore, the only jurisdictional prerequisite that Defendants must prove is whether there is an agreement in writing within the meaning of the Convention.
Plaintiff contends that the agreement-in-writing prerequisite is not met because the Arbitration Clause is ambiguous under Florida law. According to Plaintiff, Florida law applies pursuant to the Suits Against Us Provision in the Policy. Under Florida law, "the Policy must be read as a whole." [D.E. 4 at 5]. When read as a whole, Plaintiff argues, "the Policy is ambiguous as the manner of suit, the place of suit, the time of suit, and related issues" conflict with the Arbitration Clause. [D.E. 4 at 5]. The Court disagrees.
Under the Convention, "each signatory must recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration." Hodgson v. Royal Caribbean Cruises, Ltd., 706 F.Supp.2d 1248, 1253 (S.D. Fla. 2009) (quoting Convention art. II(1) ). Article II of the Convention states: "The term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration *1262 agreement, signed by the parties or contained in an exchange of letters or telegrams." Dynamo v. Ovechkin, 412 F.Supp.2d 24, 27 (D.D.C. 2006) (quoting Convention, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, reprinted in 9 U.S.C. § 201 ). Without an agreement in writing that satisfies this provision, there is no subject matter jurisdiction. Id.
The Court finds that the Defendants have met its burden of proof concerning the agreement-in-writing prerequisite. The Arbitration Clause is contained within the Policy. The parties to the Policy are identical to the Parties in this action. The effective date of the Policy includes the date of the damages that gave rise to Plaintiff's insurance claim. Additionally, "Arbitration Clause" is typed in all caps before the language stating that the Parties agree to submit "[a]ll matters in difference between the Insured and the Companies ... in relation to this insurance ... to an Arbitration Tribunal." [D.E. 1-2 at 39]. Furthermore, the Policy appears to be signed by the Parties' representatives, and no Party has argued otherwise.
Plaintiff's argument that the agreement-in-writing prerequisite is not met is wholly inconsistent with the "limited jurisdictional inquiry, an inquiry colored by a strong preference for arbitration," required under the Convention. See Bautista, 396 F.3d at 1301. To be sure, "[t]his initial jurisdictional inquiry is distinct from a determination of whether the parties are bound to arbitrate." Outokumpu Stainless USA, LLC, 902 F.3d at 1324 ; see id. ("[I]n determining jurisdiction the district court need not-and should not-examine whether the arbitration agreement binds the parties before it."). As such, issues of validity, enforceability, and contractual interpretation are not part of the Court's jurisdictional calculous.[3] Indeed, "[n]othing in [the Convention] expresses an intent of Congress for the courts to engage in a uniquely rigorous inquiry upon removal of cases on the basis of the Convention." Id. at 1325.
Regarding the second step of the jurisdictional inquiry Defendants have established that this lawsuit "relates to" an arbitration agreement that falls under the Convention. Plaintiff's Complaint seeks various declarations from the Court, including a declaration of whether the Arbitration Clause is enforceable. Thus, the Arbitration Clause could conceivably affect the outcome of the Parties' dispute. Therefore, this Court has subject-matter-jurisdiction under the Convention.
B. The Motion to Compel Arbitration
Defendants moved under the Convention, 9 U.S.C. § 206, to compel arbitration pursuant to the terms of the Policy and stay or dismiss this action. According to Defendants, the clear and unmistakable terms of the Arbitration Clause demonstrates the Parties' agreement to arbitrate arbitrability. In other words, the dispute concerning the Arbitration Clause's validity and enforceability must be resolved through arbitration.
Plaintiff opposes the Motion to Compel on three grounds. First, Plaintiff re-argues *1263 that the Policy is ambiguous, and the Motion is premature because the state court must first determine the Arbitration Clause's enforceability before this Court may compel arbitration. Second, Plaintiff contends that the Policy does not contain a clear and unmistakable delegation of issues of arbitrability to an arbitrator. Third, Plaintiff argues for the first time that Defendants cannot meet the second jurisdictional prerequisite-requiring that the agreement provide for arbitration in the territory of a signatory of the Convention-because there is a dispute as to the validity of the Arbitration Clause.
1. Arbitrability
As previously stated, the FAA places arbitration agreements on equal footing with other contracts and requires courts to enforce them according to their terms. Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). Under the FAA's "primary substantive provision," all arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Id.; 9 U.S.C. § 2. Consequently, when asked to compel arbitration of a dispute courts must first determine whether the parties agreed to arbitrate that dispute. Mitsubishi Motors Corp., 473 U.S. at 626, 105 S.Ct. 3346. The court is to make this determination by applying the "federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the FAA." Id.
Questions of arbitrability encompass two types of disputes: (1) disputes about "whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement," and (2) threshold disputes about "who should have the primary power to decide" whether a dispute is arbitrable. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942, 944-45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (emphasis original). When addressing the first type of dispute-whether a dispute is arbitrable-"any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). However, when addressing the second type of dispute-that is, "when courts decide whether a party has agreed that arbitrators should decide arbitrability"-courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." First Options, 514 U.S. at 944, 115 S.Ct. 1920 (emphasis added) (quoting AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ). Significantly, the question of who should decide arbitrability precedes the question of whether a dispute is arbitrable. Belnap v. Iasis Healthcare, 844 F.3d 1272, 1281 (10th Cir. 2017).
Notably, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." Rent-A-Ctr., W., Inc., 561 U.S. at 70-71, 130 S.Ct. 2772. Therefore, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." Id.; See e.g., id. at 69-70, 130 S.Ct. 2772 (holding in a case where the underlying contract was an agreement to arbitrate that the agreement to arbitrate enforceability (the delegation provision) was severable from the remainder of the agreement); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-47, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (holding *1264 that an arbitration provision was severable from the underlying loan agreement).
Applying this rule of severability, the Court rejects Plaintiff's contention that purported conflicts between the Provisions and the Arbitration Clause are impediments to this Court deciding the Motion to Compel.[4] Plaintiff urges this Court to apply Florida law and read the Policy "as a whole" in order to find that the Policy unenforceable. However, as a matter of federal substantive law, this Court need not consider the other provisions of the Policy to enforce the Arbitration Clause. Furthermore, because the Court has already determined that it has subject-matter jurisdiction over this action, the Motion to Compel is not premature. It is properly before this Court.
In accordance with Mitsubishi Motors Corp., the Court now assesses whether the Parties agreed to arbitrate issues concerning the Arbitration Clause's validity and enforceability.
2. Delegation Clauses
The parties to a contract may agree to have an arbitrator, rather than a court, decide issues of arbitrability, including whether an arbitration agreement is valid and/or enforceable. See Rent-A-Ctr., 561 U.S. at 68-70, 130 S.Ct. 2772 ; Bodine v. Cook's Pest Control Inc., 830 F.3d 1320, 1324 (11th Cir. 2016) ; Parnell v. CashCall, Inc., 804 F.3d 1142, 1146 (11th Cir. 2015) ; AT & T Techs., 475 U.S. at 649, 106, 106 S.Ct. 1415 (stating that parties may agree to arbitrate arbitrability). An Agreement to arbitrate arbitrability constitutes "[a]n agreement to arbitrate a gateway issue" which "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Rent-A-Ctr., 561 U.S. at 68-70, 130 S.Ct. 2772. Such agreements to arbitrate arbitrability are generally referred to as "delegation clause[es]." Id. at 68-70, 130 S.Ct. 2772. A delegation clause will be upheld if it represents the parties' "clear and unmistakable" intent to allow issues of arbitrability to be decided by an arbitrator. Id. at 69 n.1, 130 S.Ct. 2772.
Importantly, the mere presence of a delegation clause in a contract is not dispositive. A delegation clause operates as a defense that the defendant must raise to rely upon it. See Johnson v. Keybank Nat'l Ass'n, 754 F.3d 1290, 1291-92 (11th Cir. 2014). When a delegation clause is properly raised by the defendant and never specifically challenged by the plaintiff, the FAA directs the court to treat the clause as valid and compel arbitration. See, e.g., Rent-A-Ctr., 561 U.S. at 68-70, 130 S.Ct. 2772 ; Parnell, 804 F.3d at 1146. When the defendant does not properly raise the delegation clause and the plaintiff suffers prejudice as a result, the defendant has waived the delegation clause and the court must determine whether the arbitration agreement is enforceable. See, e.g., Johnson, 754 F.3d at 1294 ; see also In re Checking Account Overdraft Litig., 754 F.3d 1290, 1291 (11th Cir. 2014) (noting that "[a]rbitration-friendly federal law recognizes 'delegation clauses' that direct an arbitrator to decide the validity of an arbitration agreement" but finding that defendant waived its right to enforce that provision by waiting too long to invoke it).
When federal courts interpret an agreement to determine whether the parties committed an issue to arbitration, *1265 state contract law governs and directs the courts' analyses. Parnell, 804 F.3d at 1147. Notably, New York and Florida courts apply the common law plain-meaning rule when interpreting contracts. See Bassuk Bros. v. Utica First Ins. Co., 1 A.D.3d 470, 768 N.Y.S.2d 479, 481 (2003) ("[A]n unambiguous policy provision must be accorded its plain and ordinary meaning, and the court may not disregard the plain meaning of the policy's language in order to find an ambiguity where none exists.") (internal citation omitted) ); Washington Nat. Ins. Corp. v. Ruderman, 117 So.3d 943, 948 (Fla. 2013) ("Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written.").
In Rent-A-Center, the Supreme Court explained how courts should decide a challenge to an arbitration agreement that contains a delegation clause. 561 U.S. 63, 70, 130 S.Ct. 2772. The Court distinguished between a challenge to the arbitration agreement as a whole, and a specific challenge to the delegation clause. The Court held that unless the party opposing arbitration challenges the delegation provision specifically, courts must treat it as valid and must enforce it, leaving any challenge to the validity of the arbitration agreement as a whole for the arbitrator. Id. at 72, 130 S.Ct. 2772. See id. at 66, 73, 130 S.Ct. 2772 (finding that the defendant properly raised the delegation clause by consistently arguing that the issue of arbitrability was assigned to the arbitrator; compelling arbitration where plaintiff challenged "the entire arbitration agreement, including the delegation clause, [ ] as unconscionable" but did not challenge the delegation clause specifically) (emphasis original).
In Parnell, the Eleventh Circuit applied the Rent-A-Center pleading requirement. 804 F.3d at 1148. The loan agreement at issue contained a delegation clause that committed "all 'Disputes' to arbitration and expressly stated that a Dispute includes 'any issue concerning the validity, enforceability, or scope of th[e] loan or the Arbitration agreement.' " Id. The Court found this language "unambiguously" committed to the arbitrator the power to determine the enforceability of the agreement to arbitrate. Id. (applying the plain-meaning rule under Georgia law). The plaintiff opposing arbitration "urg[ed] [the court] to hold that no delegation provision exist[ed] because the language appear[ed] within a string citation of examples." Id. at 1148. In rejecting the plaintiff's argument, the court held that "the Loan Agreement contain[ed] a delegation provision and, though [plaintiff] challenged the validity of the arbitration provision, he did not articulate a challenge to the delegation provision specifically." Id. at 1146. Therefore, the determination of whether the loan agreement's arbitration clause was enforceable was for the arbitrator to decide. Id. See also In re Checking Account Overdraft Litig. MDL No. 2036, 674 F.3d 1252, 1256 (11th Cir. 2012) (noting where a delegation provision encompassed "any issue" that " '[t]he agreement could not have been broader. Any disputes means all disputes, because 'any' means all' " (quoting Anders v. Hometown Mortg. Servs., Inc., 346 F.3d 1024, 1028 (11th Cir. 2003) ).
Here, the Court finds that the Arbitration Clause in the Policy contains a delegation clause, and Defendants have properly relied upon it as a defense. The Arbitration Clause requires that "[a]ll matters in difference between the Insured and the Companies ... in relation to this insurance, including its formation and validity... be referred to an Arbitration Tribunal ..." [D.E. 1-2 at 39] (emphasis added). Interpreting this language in accordance *1266 with state law[5] and remaining cognizant that the delegation clause is severable from the Arbitration Clause, the only reasonable interpretation is that the Parties "clear[ly] and unmistakabl[ly]" agreed to give an arbitrator exclusive authority to resolve any dispute relating to the Policy. Indeed, like the delegation clause in Parnell, this delegation clause contains both a broad delegation of "all" disputes and a specific example of one type of dispute, here "validity." Furthermore, Defendants raised the delegation clause in their Motion to Compel and their Reply.
Plaintiff's attempt to avoid the delegation clause is unavailing. Like the plaintiff in Parnell, Plaintiff urges this Court to essentially ignore the language of the Arbitration Clause to find that no delegation clause exists. Under Parnell, Plaintiff's argument fails to meet the Rent-A-Center pleading standard because it does not constitute a challenge to the delegation clause specifically. Rather, it is merely a challenge to the validity of the Arbitration Clause as a whole, which does not defeat the delegation clause. Assuming arguendo that Plaintiff's argument can be construed as a direct challenge to the delegation clause, Plaintiff's argument still fails because the Arbitration Clause unambiguously commits to the arbitrator the power to determine issues of arbitrability, including validity and enforceability.
3. Enforcement Under the FAA and the Convention
The FAA provides two causes of action in federal district court for enforcing arbitration agreements falling under the Convention: (1) an action to compel arbitration pursuant to an arbitration agreement falling under the Convention, 9 U.S.C. § 206, and (2) an action to confirm an arbitration award made pursuant to an agreement falling under the Convention, 9 U.S.C. § 207. Czarina, L.L.C., 358 F.3d at 1290-91. Section 206 provides that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."
In view of the strong federal policy favoring arbitration, courts deciding a motion to compel under the Convention are to conduct "a very limited inquiry." Mitsubishi Motors Corp., 473 U.S. at 625, 105 S.Ct. 3346 ; Bautista, 396 F.3d at 1294-95. However, "this inquiry is necessarily more rigorous than on a motion to remand because the district court must determine whether the parties before the court agreed to arbitrate their dispute." Outokumpu Stainless USA, LLC, 902 F.3d at 1325 (citing Bautista, 396 F.3d at 1295 ).
A district court must order arbitration unless (1) the four jurisdictional prerequisites[6] are not met, or (2) one of the Convention's affirmative defenses applies. Bautista, 396 F.3d at 1294. The Convention requires that courts enforce an agreement to arbitrate unless the agreement is "null and void, inoperative or incapable of being performed." Id. at 1294-95 (quoting Convention, art. II(3) ). The Eleventh Circuit has interpreted the Convention's "null and void" clause to limit the *1267 bases upon which an international agreement may be challenged to standard breach-of-contract defenses. Id. at 1302. Therefore, an arbitration agreement is "null and void" under the Convention only where it is obtained through those limited situations, "such as fraud, mistake, duress, and waiver, constituting standard breach-of-contract defenses that can be applied neutrally on an international scale." Lindo v. NCL (Bahamas), Ltd., 652 F.3d 1257, 1276 (11th Cir. 2011) (quoting Bautista, 396 F.3d at 1302 ) (internal marks omitted).
Here, the Court finds that the jurisdictional prerequisites are met and no affirmative defenses under the Convention apply. Plaintiff's challenge to the second jurisdictional prerequisite based on a dispute over the Arbitration Clause's validity is foreclosed by the delegation clause, which expressly commits that issue to an arbitrator. Additionally, the plain language of the Arbitration Clause provides for arbitration in the United States (a signatory of the Convention). Finally, Plaintiff has not raised any of the Convention's affirmative defense.
III. CONCLUSION
This Court has subject-matter-jurisdiction over this action under the Convention. The Arbitration Clause in the Policy contains a valid delegation clause that gives an arbitrator exclusive authority to resolve any dispute relating to the Policy. Accordingly, it is hereby
ORDERED AND ADJUDGED that Defendants Certain Underwriters At Lloyd's, London et al.'s Motion to Compel Arbitration [D.E. 3] is GRANTED. The Parties shall proceed to arbitration in accordance with the terms of the Policy. Additionally, it is
ORDERED AND ADJUDGED that Plaintiff Ytech 180 Units Miami Beach Investments LLC's Motion for Remand and Incorporated Memorandum of Law [D.E. 4] is DENIED. It is further
ORDERED AND ADJUDGED that this Matter, in its entirety, is DISMISSED WITH PREJUDICE. Each party shall bear its own costs and attorney's fees, except as agreed upon by the Parties. The Clerk of Court shall CLOSE this case. All pending motions are DENIED AS MOOT.
DONE AND ORDERED in Chambers at Miami, Florida, this 12th day of February, 2019.

The Court notes two exceptions to this general rule: as stated in the Convention's removal statute, 9 U.S.C § 205, (1)"the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal" and (2) defendants may, at any time before the trial thereof, remove such action or proceeding," see Sheinberg v. Princess Cruise Lines, Ltd., 269 F.Supp.2d 1349, 1352 (S.D. Fla. 2003) (noting that the standard 30-day removal time-limit does not apply to removals under the Convention). These exceptions are not at issue here.

Specifically, (1) the Arbitration Clause provides for arbitration to take place within the United States (a signatory to the Convention); (2) the Arbitration Clause arises out of the Parties commercial legal relationship (as insurer and insured); and (3) Hannover and Certain Underwriters are parties to the Arbitration Clause who are not U.S. citizens. The Court notes that Plaintiff challenges the seat of the arbitration. While the Arbitration Clause states that the "Arbitration shall be in New York," Plaintiff posits that it should be held in Florida pursuant to the Place of Suit Provision. This dispute, however, does not impact the jurisdictional inquiry because both states are located within the United States.

Plaintiff also raises the issue of arbitrability in its Motion to Remand, arguing that it is a threshold matter to be determined by the Court. [D.E. 4 at 8 (stating that "[q]uestions of arbitrability thus include both questions regarding the existence of a valid arbitration agreement, and the validity of an arbitration agreement's provisions.") (emphasis added) and D.E. 12 at 5-6]. In light of the limited jurisdictional inquiry applicable at this stage, the Court need not decide arbitrability to determine subject-matter jurisdiction. Instead, the Court addresses Plaintiff's argument regarding arbitrability infra in connection with Plaintiff's opposition to Defendant's Motion to Compel.

This narrow ruling is made without deciding whether the Arbitration Clause is valid and/or enforceable.

The determination of whether New York or Florida law applies is left for the arbitrator to decide.

As mentioned supra, the four jurisdictional prerequisites are (1) an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen. Bautista, 396 F.3d at 1294 n.7.